UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET KEELY and MARGARET
KEELY as personal representative of the
Estate of William Keely,

       Plaintiffs,

v.

FIRE INSURANCE EXCHANGE, a/k/a
Farmers Insurance Group,

       Defendant.

_____/

Case No. 10-13707

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 28, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

On August 18, 2010, Margaret Keely filed this suit, seeking a declaration that Fire

Insurance Exchange, a/k/a Farmers Insurance Group ("Farmers") breached a contractual

duty to defend Keely and her late husband, William Keely, in a tort action arising from an

alleged sexual assault. Before the Court is Farmers' motion for summary judgment, filed

on March 9, 2011 pursuant to Federal Rule of Civil Procedure 56. The matter has been

fully briefed, and the Court heard oral argument on June 1, 2011. For the reasons stated

below, the Court grants Farmers' motion.

## I. Factual and Procedural Background

The civil action underlying this case arose from a relationship between Theresaann Toth and Mr. and Mrs. Keely. Theresaann Toth was a minor at all times relevant to this suit. She attended Oxford High School in Oxford, Michigan, where Mrs. Keely was a teacher. During her freshman year, Toth began having lunch with Mrs. Keely and going on errands with her. Toth soon began working for Keystone Builders, a company operated by the Keelys. Her job entailed running errands, and she often visited the Keelys at their home as part of the job. Their relationship became closer over the next few years, with Toth accompanying the Keelys on vacations to Colorado and northern Michigan.

As part of the relationship, Toth entered into a "behavior contract" with the Keelys. Toth was promised that if she attended classes, maintained a 3.2 grade point average in school, and saved half of the money from her job, the Keelys would match her savings with funds that she could use to purchase a vehicle. She could not skip classes, be suspended or expelled from school, or "get in trouble" with the police. Toth apparently violated the contract by purchasing marijuana. Mr. Keely picked her up from school one day and informed her of the consequences for violating the contract. Toth claims that Mr. Keely produced a list of four alternatives, one of which involved her submitting to a "spanking." Toth testified that this would require her to lay in Mr. Keely's room and take off her pants, after which Mr. Keely would rub her and give her a "few surprise hits." Def.'s Br. Supp. Mot. Summ. J. Ex. C at 42. Toth informed Mrs. Keely about this.

Some time later, Mr. Keely asked Toth if she would like a job paying up to $500 per week. Toth expressed interest, and Mr. Keely allegedly explained that the job involved the testing of sex toys. He was allegedly designing sex toys for the military which could

be used to prevent the contraction of venereal diseases.  Mr. Keely paid Toth $100 for each session, beginning in March 2008.  Toth claims that Mr. Keely had her view pornographic DVDs and magazines during these sessions in order to "inspire her."  She claims that she participated in four to ten of these sessions.

Toth further alleges that she was sexually assaulted by Mr. Keely on June 25 and 26, 2008.  Toth claims that these incidents occurred while Mr. Keely was massaging her.  She alleges that Mr. Keely touched her vagina with his hand and with a vibrator.  Toth reported this to Mrs. Keely soon afterward.

Toth apparently disclosed these incidents to a friend, who contacted the police.  After an investigation, Mr. Keely was charged with three counts of activity sexually abusive to a minor, one count of fourth-degree criminal sexual conduct, and one count of furnishing obscene materials to a minor.  He was also charged with four counts of firearm possession by a felon based on a prior conviction for second-degree criminal sexual conduct, and four counts of possession of a firearm in the commission of a felony.  Mr. Keely pleaded not guilty to these offenses and was bound over for trial after a preliminary examination.  He committed suicide while incarcerated at the Oakland County Jail.

On March 30, 2010, Toth filed a civil action in Oakland County Circuit Court against Oxford Community Schools and Mrs. Keely, both individually and in her capacity as the personal representative of the Estate of William Keely.  Toth brought claims of assault, battery, intentional infliction of emotional distress, negligence, and gross negligence against Mr. Keely.  Against Mrs. Keely, Toth asserted a claim under Michigan's Child Protection Law, Michigan Compiled Laws § 722.621 *et seq.*, as well as common law

3

claims of negligence and gross negligence. Toth raised a civil conspiracy claim against the Keelys, plus claims of vicarious liability and negligent supervision against Oxford Community Schools.

Mrs. Keely submitted a claim for benefits to Farmers under her homeowners' insurance policy and provided Farmers with the pleadings and the invoices of an attorney she retained to review the matter. Farmers refused to defend Mrs. Keely in the lawsuit, stating that it was not covered under her insurance policy.

On August 18, 2010, Mrs. Keely filed this suit against Farmers in the Eastern District of Michigan on behalf of herself and her late husband's estate. She seeks a declaration that Farmers is obligated to defend her and the Estate of William Keely in the state court action and a declaration that Farmers is liable for any resulting damages up to the policy limit. Mrs. Keely also seeks to recover the attorney's fees and costs she has incurred in defending the state court action and bringing this declaratory judgment action. Farmers filed its motion for summary judgment on March 9, 2011, arguing that it properly denied Mrs. Keely's claim because Toth's lawsuit is not covered by the insurance policy.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates

4

summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

**A. Governing Law**

Neither party appears to dispute that Michigan law applies to the insurance policy. Michigan courts treat insurance policies just as any other contract, and interpret the agreement to effectuate the parties' intent. *Allstate Ins. Co. v. Keillor*, 450 Mich. 412, 417, 537 N.W.2d 589, 591 (Mich. 1995). Courts look to the contract as a whole and give meaning to all of its terms. *Id.* "The terms used in an insurance policy either are clearly

defined within the policy or are given their commonly used meaning." *Group Ins. Co. of Mich. v. Czopek*, 440 Mich. 590, 596, 489 N.W.2d 444, 447 (Mich. 1992).  An insurance policy is to be enforced as written, and ambiguity cannot be created through interpretation where none exists.  *Keillor*, 450 Mich. at 417, 537 N.W.2d at 591.

**B. Duty to Defend**

"The duty of an insurance company to provide a defense in an underlying tort action depends upon the allegations in the complaint and extends to allegations which 'even arguably come within the policy coverage.'"  *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 662, 443 N.W.2d 734, 737 (Mich. 1989) (quoting *Detroit Edison Co. v Mich. Mut. Ins. Co.*, 102 Mich App 136, 142, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980)).  An insurer has a duty to defend against even groundless or frivolous claims.  *Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480, 487 (Mich. 1994).  In determining whether coverage exists, courts focus on the cause of the injury instead of the terminology used in the plaintiff's pleadings.  *Freeman*, 432 Mich. at 662-63, 443 N.W.2d at 737.  The substance of the complaint, rather than its form, controls the analysis.  *Id.*  Where both an insurance policy's coverage and exclusion provisions are at issue, the Court must first determine whether coverage exists, and then whether any exclusion precludes coverage.  *Id.* at 668, 443 N.W.2d at 740.

**1. Coverage of the Alleged Misconduct**

With respect to its liability coverage, the Farmers insurance policy provides:

We pay those damages which an **insured** becomes legally obligated to pay because of **bodily injury**, **property damage**, or personal injury resulting from an **occurrence** to which this coverage applies. . . . At our expense and with

attorneys of our choice, we will defend an **insured** against any covered claim
or suit.

Def.'s Br. Supp. Mot. Summ. J. Ex. B at 13 (emphasis in original).  The parties dispute

whether Toth's injuries resulted from an "occurrence" covered by the policy.  The policy

defines "occurrence" as "an accident including exposure to conditions which results

during the policy period in bodily injury or property damage."  *Id.* at 4.

The policy does not define "accident," but Michigan courts have repeatedly held that

"an accident is an undesigned contingency, a casualty, a happening by chance, something

out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to

be expected."  *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 114, 595 N.W.2d

832, 838 (Mich. 1999) (quoting *Arco Indus. v. Am. Motorists Ins. Co.*, 448 Mich. 395,

404-05, 531 N.W.2d 168, 173 (Mich. 1995)).  The definition of "accident" is framed from

the standpoint of the insured, rather than the injured party.  *Id.*  Where an insured acts

intentionally, courts consider "whether the consequences of the insured's intentional act

either were intended by the insured or reasonably should have been expected because of

the direct risk of harm intentionally created by the insured's actions."  *Id.* at 115, 595

N.W.2d at 839.  For purposes of civil liability insurance, "courts should infer the intent to

injure where an adult sexually assaults a child."  *Fire Ins. Exch. v. Diehl*, 450 Mich. 678,

690, 545 N.W.2d 602, 607 (Mich. 1996).

Toth does not allege conduct that could be characterized as accidental.  Mr. Keely

allegedly made advances toward Toth, including: (1) his suggestion that Toth submit to a

"spanking," (2) his offering Toth a job testing sex toys, (3) his provision of pornographic

materials to Toth, and (4) his touching of Toth's vagina on two occasions. These claims involve intentional actions taken by Mr. Keely, not chance happenings. The Court infers the intent to harm, as Mr. Keely was an adult and Toth was a minor. Because the alleged misconduct was not accidental, it cannot constitute an "occurrence" that would trigger coverage under the insurance policy.

Toth's claim under the Michigan Child Protection Law asserts that Mrs. Keely failed to report Mr. Keely's actions to the proper authorities. The Court looks to the underlying cause of the injury to determine coverage, rather than the theory of liability. *Freeman*, 432 Mich. at 690, 443 N.W.2d at 750. Toth's injuries were caused by the actions of the alleged abuser, Mr. Keely. Mrs. Keely's failure to report subjects her to liability, but it cannot be considered the cause of Toth's injuries. As Toth's injuries resulted from actions that are not covered by the policy, the Court concludes that Farmers had no duty to defend against the Michigan Child Protection Law claim.

Toth raises negligence claims against Mr. and Mrs. Keely. These claims are based, however, on intentional misconduct and the violation of criminal statutes. There is no duty to defend or provide insurance coverage where a plaintiff characterizes allegations of intentionally tortious conduct as "negligent" activity. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 456 (6th Cir. 2003); *Tobin v. Aetna Cas. & Sur. Co.*, 174 Mich. App. 516, 518, 436 N.W.2d 402, 403 (Mich. Ct. App. 1988). To the extent that Toth asserts a negligent supervision claim against Mrs. Keely, that claim is also not covered by the insurance policy. An insurer has no duty to defend a negligent supervision claim that is wholly derivative of a claim that is not covered. *Gorzen v. Westfield Ins. Co.*, 207 Mich.

8

App. 575, 578 (Mich. Ct. App. 1994); *see Mich. Basic Prop. Ins. Ass'n v. Wasarovich*, 214 Mich. App. 319, 328, 542 N.W.2d 367, 371 (Mich. Ct. App. 1995).  The negligence claim is derivative of the claims against Mr. Keely, as Toth alleges that Mrs. Keely failed to supervise him.  Because the claims against Mr. Keely are not covered under the policy, the negligent supervision claim is not covered.

The civil conspiracy claims also fall outside the scope of insurance coverage.  Civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992).  If an action is taken to accomplish a criminal or lawful purpose, or to accomplish a lawful purpose by criminal means, then it cannot be considered an accident.  As civil conspiracy does not constitute an "occurrence" under the policy, Farmers had no duty to defend against Toth's conspiracy claims.

Mrs. Keely argues that Farmers has a duty to defend because the underlying facts are disputed.  The insurer's duty to defend, however, depends only upon the complaint's allegations.  *Freeman*, 432 Mich. at 662, 443 N.W.2d at 737.  While an insurer must defend against even groundless or frivolous claims, *City of Clare*, 446 Mich. at 15, 521 N.W.2d at 487, "[t]his is not to say that liability insurance is litigation insurance." *Czopek*, 440 Mich. at 605, 489 N.W.2d at 451.  The duty to defend arises only if the complaint's allegations arguably fall within the policy's coverage.  *Freeman*, 432 Mich. at 662, 443 N.W.2d at 737.  Michigan courts have repeatedly held that "[i]t is the substance of the complaint that controls."  *Czopek*, 440 Mich. at 605, 489 N.W.2d at 450; *see also Detroit*

9

*Edison Co. v. Mich. Mut. Ins. Co.*, 102 Mich. App. 136, 141-42, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980) ("The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured."). Regardless of their actual merit, Toth's claims fall outside the scope of insurance coverage because no accident is alleged. Farmers therefore has no duty to defend against Toth's lawsuit.

### 2. Applicability of the Intentional Acts Exclusion

Even if the "occurrence" requirement of the policy were satisfied, Farmers had no duty to defend because the policy's "intentional acts" exclusion precludes coverage. The intentional acts exclusion states that no coverage is provided for bodily injury, property damage, or personal injury which is either:

> a. caused intentionally by or at the direction of an **insured**; or
> b. results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

Def.'s Br. Supp. Mot. Summ. J. Ex. B at 15-16 (emphasis in original). The *Diehl* court, interpreting nearly identical policy language, concluded that injury is "reasonably foreseeable" where an adult sexually assaults a minor. 450 Mich. at 690, 545 N.W.2d at 607. Because Toth's injuries allegedly resulted from Mr. Keely's intentional acts, and those injuries were reasonably foreseeable, the exclusion applies. Farmers was therefore within its rights in denying coverage.

Mrs. Keely argues that an insurer must defend against claims relating to intentional acts where those acts were not intended to injure, relying on *Alber v. Farm Bureau Mutual Insurance Company of Michigan*, 187 Mich. App. 557, 468 N.W.2d 282 (Mich. Ct. App.

1991).  This reliance is misplaced, as the Michigan Supreme Court subsequently vacated the decision of the Court of Appeals, reinstating the trial court's order granting summary disposition for the insurer.  492 N.W.2d 246 (Mich. 1992).

**C. Duty to Indemnify**

"[A]n insurer's duty to defend is broader than the duty to indemnify."  *City of Clare*, 446 Mich. at 15, 521 N.W.2d at 487 (Mich. 1994).  The Court has found that Farmers had no duty to defend against Toth's lawsuit, and for the same reason, finds that Farmers had no duty to indemnify Mrs. Keely for damages awarded in that suit.  The conduct alleged by Toth was not covered by the insurance policy, and "[i]t is impossible to hold an insurance company liable for a risk it did not assume."  *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 434 (Mich. 1992).

Accordingly,

**IT IS ORDERED** that Farmers' motion for summary judgment is **GRANTED**.


s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Richard E. Rosenberg, Esq.
Richard J. Gianino, Esq.